IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| IN THE MATTER OF:<br><br>FRANCIS E. ANDERS,<br><br>Debtor(s). | CASE NO. BK17-41268<br><br>CH. 13 |
|---|---|

# ORDER

Trial was held in North Platte, Nebraska on November 28, 2018, on debtor's Objection (Fil. #19) to Claim No. 3-1 of Newtek Small Business Finance, LLC ("Newtek") and the Resistance filed by Newtek (Fil. #24). James C. Bocott appeared for Debtor, Francis E. Anders, DVM ("Dr. Anders"). Patrick M. Heng appeared for Newtek. This order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

For the reasons that follow, the objection to Newtek's proof of claim is sustained and the claim amount is reduced to $85,945.03.

*Findings of Fact*

The parties filed a Joint Stipulation setting forth their agreement regarding many of the material facts of this case (Filing #75), and the remaining facts were established at trial and are generally undisputed. The undisputed material facts are as follows:

1. That on or about June 28, 2005, Dr. Anders made an application through Newtek for a United States Small Business Administration ("SBA") business loan which was subsequently approved.

2. To evidence the loan, Dr. Anders executed an SBA promissory note dated August 6, 2005. The note was secured by a security agreement and a deed of trust encumbering certain commercial and residential real estate owned by Dr. Anders. The note had a maturity date of August 9, 2015.

3. Dr. Anders defaulted on payments under the note and failed to pay the note in full upon its maturity. Newtek initiated non-judicial foreclosure and a trustee's sale was scheduled for April 28, 2016.

4. On April 25, 2016, Dr. Anders filed a lawsuit against Newtek in Dawes County, Nebraska, and obtained a temporary injunction from the scheduled trustee's sale.

        However, the injunction did not become permanent and the trustee's sale was subsequently rescheduled for June 9, 2016. By agreement, the trustee's sale was again postponed, and then was not held because Dr. Anders filed a Chapter 13 bankruptcy case (Case No. BK16-41583) on October 19, 2016. That case was dismissed on June 16, 2017.

5.     The current bankruptcy case was filed on August 14, 2017.

6.     Newtek filed its proof of claim (Claim No. 3-1) on October 5, 2017, in the amount of $124,300.88 asserting that claim was fully secured and continues to accrue contractual interest.

7.     Dr. Anders filed an objection to Newtek's claim on October 11, 2017. The objection does not dispute the principal and interest portion of the claim, but objects to that portion of the claim in the amount of $54,958.05[1] for miscellaneous and late fees as excessive and unreasonable.

8.     The miscellaneous fees in Newtek's proof of claim included expenses for appraisals of the business furniture, fixtures, machinery and equipment securing Newtek's loan which were billed the following amounts: September 18, 2012 - $1,450.00; September 25, 2014 - $1,450.00; August 28, 2015 - $2,450.00.

9.     The miscellaneous fees in Newtek's proof of claim included expenses for a series of environmental assessments and related actions with respect to the real estate securing Newtek's loan, which were billed the following amounts: March 22, 2013 - $2,750.00; June 1, 2013 - $11,000.00; June 6, 2015 - $1,700.00; February 7, 2016 - $1,700.00.

10.     The miscellaneous expenses in Newtek's proof of claim included expenses for real estate appraisals of Dr. Anders' residential real estate securing Newtek's loan which were billed the following amounts: July 17, 2012 – appraisal for $600.00; January 7, 2014 – appraisal for $650.00; July 31, 2015 – appraisal for $650.00.

11.     The miscellaneous expenses in Newtek's proof of claim included expenses for commercial real estate appraisals of Dr. Anders' business real estate securing Newtek's loan which were billed the following amounts: October 8, 2012 - $3,300.00; February 7, 2014 - $3,300.00; June 30, 2015 - $3,300.00.

12.     The miscellaneous expenses in Newtek's proof of clam included the following additional expenses: attorney fees - $5,612.60; site inspection costs - $200.00; asset search - $300.00; title report - $600.00; underground storage tank registration fee - $5.00.

---

[1] The objection calculated this number as $54,695.45, but that appears to be a mathematical error.

13. Newtek's trial witness was Gaye Price, Vice President of Newtek. Ms. Price has been in the lending industry since the early 2000s, and works in the area of problem or default loans for Newtek. She was assigned to deal with Dr. Anders' loan in early 2012.

14. In early 2012, Dr. Anders was in default on his loan payments. Ms. Price contacted Dr. Anders and he requested a loan modification. Ms. Price provided Dr. Anders with the loan modification request form along with a list of certain updated financial information that he needed to provide before the modification request could be reviewed. According to Ms. Price, she continually tried to work with Dr. Anders to obtain the necessary financial information. Further, due to the modification request, Ms. Price requested and obtained the first set of appraisals, assessments, and inspections.

15. According to Ms. Price, Dr. Anders refused and/or failed to provide the updated financial information despite her repeated requests. When he did provide some information, it typically was already outdated and needed to be updated. Those failures caused the modification process to continue to be extended. According to Ms. Price, in early 2014, Dr. Anders still was requesting a modification. Ms. Price testified that by then, the first set of appraisals and assessments were too old to rely upon pursuant to SBA regulations and a second set was ordered.

16. In late 2014, due to Dr. Anders' failure to provide the necessary information to Ms. Price in her attempt to modify the loan pursuant to his request, Newtek decided to liquidate or foreclose on its collateral. The process was delayed a bit further when Ms. Price heard from an attorney on behalf of Dr. Anders, but the attorney never followed up. Accordingly, since the decision was to foreclose on the colalteral, Ms. Price felt that SBA regulations required another full set (the third) of appraisals and assessments.

17. Newtek and Ms. Price assert that all of the various appraisals and assessments were required pursuant to standard operating procedures in effect for servicing SBA loans. Those SBA standard operating procedures ("SOP") can be found on this Court's docket at Filing #76 through #81, and will not be restated here in full. Instead, since there is no dispute as to the text of the standard operating procedures, the court will discuss those procedures in connection with the discussion portion of this order.

### *Discussion*

This case presents a somewhat unique situation for this Court. The underlying facts are not in dispute. The parties agree as to who, what, where, when and why. The applicable law is also not in dispute. 11 U.S.C. § 506(b) allows an over-secured creditor to collect interest on its claim, as well as any reasonable fees, costs or charges provided for in the agreement under which the claim arose. The parties agree that the underlying loan documents contain appropriate provisions for the lender to collect its fees, costs and charges. Further, the parties agree that since the loan is an SBA

-3-

loan, Newtek was required to follow the SOPs introduced into evidence. They also agree that Newtek is an over-secured creditor.[2]

As presented at trial, the issues to be decided are whether Newtek correctly assessed late charges of $13,592.20, and whether it was reasonable and necessary to incur expenses (for appraisals, assessments and other fees) totaling $41,365.85 in the three-and-a-half year period prior to bankruptcy filing, in connection with an over-secured debt having a principal and interest balance of less than $70,000.00. Newtek asserts that the late charges were properly calculated under the loan documents and that the expenses were reasonable and appropriate because the SBA SOPs required Newtek to incur the expenses.

Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the Bankruptcy Rules shall constitute prima facie evidence of the validity and amount of the claim. The objecting party can rebut a proof of claim's presumptive validity with "substantial evidence." *McDaniel v. Riverside Cnty. Dep't of Child Support Servs. (In re McDaniel)*, 264 B.R. 531, 533 (B.A.P. 8th Cir. 2001). When the objecting party puts forward evidence rebutting the claim, the claimant must then produce additional evidence of the claim's validity. *Gran v. IRS (In re Gran),* 964 F.2d 822, 827 (8th Cir. 1992). The claimant always bears the burden of persuasion. *FDIC v. Union Entities (In re Be-Mac Transp. Co.),* 83 F.3d 1020, 1025 n.3 (8th Cir. 1996). Here, the Court previously found that Dr. Anders had rebutted the proof of claim's presumptive validity and that Newtek needed to produce additional evidence of the claim's validity. Each objectionable line item of Newtek's claim is discussed below.

*Late Charges*

Addressing first the objection with regard to the late charges assessed in the amount of $13,592.20, Dr. Anders argues that the charges were not properly calculated in accordance with the loan documents. The promissory note provides: *"Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5% of the unpaid portion of the regularly scheduled payment."* Newtek attached a payment history to its proof of claim, which shows the timing and amount of payments and the late charges assessed.

The payment history reveals that the contractual payment amount as of August 2011 was $1,655.00. Five percent of that payment is $82.75, which is the late charge amount shown on the payment history -- until November 11, 2012. At that time, the payment history shows Newtek increased the late charge to $95.75, even though the contractual payment amount shown on Newtek's payment history did not change. Then, on November 11, 2014, the late charge Newtek assessed increased again -- this time to $302.45. Further, starting in August 2014, the payment history no longer shows a contractual monthly payment amount nor does it show any funds received. In fact, it appears no funds were received after July 2014.

Newtek's only explanation for the changes in the late charge amount was that, under the terms of the promissory note: "Lender must adjust the payment amount at least annually as needed

---

[2] The proof of claim lists the value of Newtek's collateral as $220,000.00.

to amortize principal over the remaining term of the note."[3] However, Newtek acknowledges that the payment history attached to its proof of claim does not reflect a payment change as a result of any such re-amortization, nor did Newtek introduce any evidence that notice of any payment change was actually provided to Dr. Anders. In fact, no evidence was provided to show that the payment amount ever actually changed. Therefore, Newtek failed to meet its burden of proof, and it was not proper for Newtek to increase the late charge amount from $82.75.

In addition, the promissory note had a maturity date of August 6, 2015. Newtek continued charging late charges after that maturity date. However, the late charges are, by the express terms of the promissory note, only applicable if a regularly scheduled payment is late. Since there were no regularly scheduled payments after August of 2015, no further late charges could become due and payable. It was not proper for Newtek to charge late charges after August 2015.

Therefore, based on the record at trial, Newtek is only entitled to a late charge of $82.75 for a period of 48 months -- from August 2011 to the maturity date. That amounts to total late charges of $3,972.00 instead of the $13,592.20 set forth in the proof of claim.[4]

*Appraisals and Environmental Assessments*

Newtek's proof of claim includes charges for environmental assessments ($17,150.00), commercial appraisals ($9,900.00), residential appraisals ($1,900.00), and business personal property ($5,698.25). Ms. Price testified that the SBA SOPs required Newtek to incur those expenses.

--**Environmental Assessments.** The SOPs introduced into evidence for the environmental assessments are SOP 50 51 3-Chapter 9, in effect starting November 15, 2010 (Fil. #77) and SOP 50 57-Chapter 5, in effect commencing March 1, 2013 (Fil. #80). For ease of reference, the SOPs will be referenced by their docket filing number.

Filing 77 is entitled Post-Default Environmental Risk Management and was in effect until March 1, 2013, when it was replaced by Filing 80. Part B tells the loan servicer when an environmental investigation is required. Specifically, an environmental investigation is required before taking title to property and before taking control of a business using hazardous substances. Contrary to the testimony of Ms. Price, an environmental investigation requirement is not triggered by a borrower's loan modification request. Further, Newtek justifies ordering multiple environmental reports due to the provision at paragraph F.2. stating that the report must be less than 180 days old at the time it is relied upon. However, as indicated, no environmental investigation was even required in connection with the loan modification request.

---

[3] This provision of the note seems to be related to adjustments to the interest rate under the adjustable interest rate provisions, and not related to situations where the payment may be in default. Regardless, there was no evidence of any payment changes.

[4] The Court recognizes that Debtor's brief calculates the late fee amount to be $6,333.40, but as indicated, the evidence presented only justifies late fees of $3,972.00.

Filing 80 is titled Environmental Risk Management and went into effect on March 1, 2013. Part C tells the loan servicer when an environmental investigation is required. In addition to taking title to property or taking control of a business using hazardous substances, an investigation is required in additional situations, such as taking substitute collateral and selling or abandoning collateral. Importantly, there is no requirement for an environmental investigation when a loan modification or extension is requested. Nor is there a requirement to do the investigation when the loan is placed in liquidation (foreclosure) status. It appears the investigation would be required at some point, but that point would be near the time the lender is closer to taking title and calculating its bid during the foreclosure process, which is governed by Part E of Filing 80.

Even when a loan in liquidation status is at the point of needing an environmental investigation, the lender does not have the unrestricted right to order and re-order environmental reports at will. Instead, Part E of Filing 80 says:

1. Scope of Investigation.

    The amount of due diligence must be prudent based on the loan[-]specific circumstances such as the Property's appraised value, the amount owed on senior liens, the SBA loan balance, the activities conducted at the property, the results of previous Environmental Investigations, access to the Property, and the cost and time involved.

Certainly, the SOP takes into account the need to be prudent and cost-effective based on a variety of factors. Here, by all accounts, this loan was well over-secured before (as well as after) any expense was incurred for environmental investigations. The cost of the investigations is excessive considering that they were triggered by a loan modification request on a loan having a relatively small principal balance when compared to the collateral package. Ordering three different sets of reports while in negotiations with the borrower simply because commercial property was involved and the prior reports were "stale" as Ms. Price testified, is simply not prudent or cost-effective. No other reason for ordering the reports was given, nor was any other evidence offered regarding prudent lending practices. It is apparent that the only environmental report that could rationally be considered prudent under these circumstances was the one in February 2016 for $1,700.00, as the loan was into the foreclosure sale process at that time. The other environmental investigation expenses are not reasonable or necessary and are disallowed.

--*Commercial Real Estate Appraisals.* The next most expensive category of charges for which Newtek seeks reimbursement are commercial real estate appraisals. Newtek ordered three of these at $3,300.00 each, for a total of $9,900.00. These appraisals were obtained over a period of about two-and-a-half years.

The SOPs introduced into evidence for the real estate appraisals were SOP 50 51 3-Chapter 2, in effect starting November 15, 2010 (Fil. #76), and SOP 50 57-Chapter 2, in effect commencing March 1, 2013 (Fil. #79). Unfortunately, those two SOPs are simply definition provisions, and do not say *when* Newtek *should* have ordered appraisals of the commercial real estate. In each, the definition of an appraisal or a "Post-Default Appraisal" is broad, and says it can be performed by

"an appraiser, broker, auctioneer," etc. It also says a real estate appraisal can consist of a real estate agent's opinion of fair market value unless prudent lending practices indicate use of Uniform Standards of Professional Appraisal Practice ("USPAP").

The appraisal SOPs do say that an appraisal should never be more than a year old at the time the lender relies on it when making a decision regarding the loan. Contrary to the testimony of Ms. Price, the SOPs do not say that new, full USPAP appraisals should be ordered just because the existing ones are "stale." Again, the SOPs take into account prudent lending practices and cost-effectiveness. Ms. Price's decision to order three full USPAP appraisals on the commercial property component of the loan collateral, considering the loan balance and requests pending at the time, was not prudent or cost-effective. Of course, it is apparent that a valuation of the property would have been needed for purposes of the foreclosure sale, but *only* at that time. If Ms. Price felt that some valuation evidence was needed for purposes of the loan modification request, she could (and under the circumstances should) have started with something much less expensive, such as a broker's price opinion. Under the facts and circumstances of this loan and the pending requests, there was no prudent need or contractual obligation for a USPAP appraisal until the property was nearing a foreclosure sale.

Therefore, only one commercial appraisal fee of $3,300 is allowed as an expense to the borrower under Newtek's proof of claim. The remainder of the commercial real estate appraisal expenses were not reasonable or necessary and are disallowed.

*--Residential appraisals and business personal property appraisals.* These items are governed under the same SOPs as the commercial real estate appraisals and suffer the same fate. There is simply no good reason for Newtek to have ordered three separate residential real estate appraisals under the facts and circumstances of the pending loan modification request. One such appraisal (for $650.00) during the foreclosure process was reasonable. The other two were not, and are disallowed. Further, the appraisal definitions are clear that an auctioneer could have given a valuation for the business personal property. Under the circumstances of this loan, and in light of the personal property being just one small piece of the total collateral package, ordering one -- much less three -- formal personal property appraisals was not prudent or necessary. Those charges are disallowed.

*Miscellaneous Fees*

Dr. Anders has not raised any specific objection to the reasonableness and appropriateness of the miscellaneous fees charged by Newtek: pre-bankruptcy legal fees of $5,612.60, site inspections of $200.00, asset search of $300.00, title search of $600.00 and a registration fee of $5.00, for a total of $6,717.60. Those amounts appear fair and reasonable and are expenses that are properly charged to the borrower under the terms of the loan documents.

*Attorney Fees for Claim Objection and Defense*

In his brief, Debtor suggests that he should be awarded his attorney fees and expenses for pursuing this claim objection litigation. However, Debtor fails to identify any legal basis or precedent in this jurisdiction for awarding attorney fees to a Debtor for successfully challenging a

creditor's claim. Further, such fees were not requested in the prayer of the claim objection nor was a request for fees mentioned in the joint pretrial statement. Similarly, Newtek's response to the claim objection did not request that it be allowed attorney fees for defending its proof of claim, nor was that issue raised in the joint pretrial statement. Even if such a request had been made, it would be unreasonable to award Newtek its attorney fees under the circumstances and result of this case. Therefore, the Court declines to award attorney fees to either party.

### *Conclusion*

11 U.S.C. § 506(b) allows an over-secured creditor to collect interest on its claim, as well as any reasonable fees, costs or charges provided for in the agreement under which the claim arose. However, § 506(b) is not a blank check; it is subject to a reasonableness requirement. Newtek did not introduce any evidence as to what is reasonable in the industry. The only evidence was the SOPs and the testimony of Ms. Price -- who testified that the expenses were incurred because they were required by the SOPs. However, the SOPs simply do not support the position of Ms. Price and Newtek. The SOPs anticipate that the loan servicer will be "prudent" based on the size of the loan, the collateral package, the status of payments and the pending request made by the borrower. As discussed above, the SOPs did not require Newtek to order the type and number of appraisals and assessments for which it seeks reimbursement. Newtek also miscalculated its late charges and failed to present evidence to support the late charges it seeks to collect.

IT IS ORDERED, that Debtor's objection (Fil. #19) to Claim No. 3-1 of Newtek Small Business Finance, LLC is sustained. Newtek's proof of claim is hereby reduced to $85,945.03, calculated as follows: Principal Balance -- $58,829.78, Interest to filing date -- $10,775.65, Late Fees -- $3,972.00, Environmental Assessments -- $1,700.00, Commercial Real Estate Appraisal -- $3,300.00, Residential Appraisal -- $650.00; legal and miscellaneous expenses -- $6,717.60. The remaining amounts set forth in Newtek's proof of claim #3-1 are disallowed.

DATED: February 19, 2019.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

Copies provided by the court to:
James Bocott
Patrick Heng
Kathleen Laughlin, Chp. 13 Trustee
United States Trustee